# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

       Plaintiff,

vs.                                     No. **CR 03-2366 MCA**

**MICHAEL MARSHALL**,

       Defendant.


## <u>MEMORANDUM OPINION AND ORDER</u>


**THIS MATTER** comes before the Court on the following motions:  Defendant Michael Marshall's *Motion to Suppress Statement* [Doc. No. 29] filed on January 14, 2004; Defendant's *Motion to Dismiss for Selective and Vindictive Prosecution, or in the Alternative, Motion to Remand to State District Court* [Doc. No. 30] filed on January 14, 2004; the United States' *Motion for Admission of Certain Transcripts of Video and Audio-Taped Interview* [Doc. No. 45] filed on January 29, 2004;  the United States' *Amended Motion for Admission of Certain Transcripts of Video and Audio-Taped Interview* [Doc. No. 43] filed on January 30, 2004; and the United States' *Sealed Request for a Hearing* [Doc. No. 65] filed on March 10, 2004.  The Court held evidentiary hearings on these motions in Albuquerque, New Mexico, on February 2, 2004; February 6, 2004; and March 1, 2004. [Doc. No. 53, 54, 60.]  Having considered the pleadings of record, the applicable law, the

evidence and the arguments of counsel presented at the hearings, and being fully advised in the premises, the Court **DENIES** all of the above motions based upon the following findings of fact and conclusions of law.

## I.        FINDINGS OF FACT

1.        Defendant was arrested on the morning of October 5, 2003, pursuant to a warrant alleging that he had sold one ounce of methamphetamine to a confidential source and received payment of $1,250 for a previous sale earlier that day.

2.        Following his arrest, Defendant was transported to the Farmington police station for custodial interrogation, and his residence was searched pursuant to a search warrant.

3.        The custodial interrogation at the Farmington police station was performed by Sergeant Brian McAchran of the Region II Narcotics Task Force.

4.        The custodial interrogation performed by Sergeant McAchran lasted approximately two hours and was recorded, for the most part, on two videotapes.

5.        The hearing on the motions was commenced on February 2, 2004, continued on February 6, 2004, and completed on March 1, 2004.

6.        The videotapes initially produced for purposes of the hearing  in this matter were copies and are not of good quality.

7.        The transcripts produced from these copies are incomplete and not reliable.

8.    At the hearing on March 1, 2004, the Government produced the original videotapes.  Expert examination and analysis of these original videotapes revealed that they were unaltered.

9.    A portion of Sergeant McAchran's interrogation of Defendant on October 5, 2003, is not recorded on the videotapes.   This portion of the interrogation occurred in between the time when the first videotape ran out and the second videotape was inserted in the videotape recorder.

10.    Sergeant McAchran advised Defendant of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), before conducting the custodial interrogation of Defendant on October 5, 2003.

11.    Defendant is a former police officer with knowledge of police interrogation techniques, the constitutional rights of a person subjected to custodial interrogation under Miranda, and the limitations on a police officer's authority to make decisions about the nature and extent of any criminal prosecution arising from a matter he investigates.

12.    Defendant appears to be alert, responsive, and coherent on the videotape.

13.    After Defendant was advised of his Miranda rights and elected to speak with Sergeant McAchran, Sergeant McAchran made several statements to Defendant in an effort to persuade him to cooperate with the investigation and identify the location of the "buy money."  These statements included expressions of sympathy, generalized predictions that Defendant's cooperation might be helpful to him, and offers to bring such cooperation to the attention of the prosecuting attorney(s) in a favorable light.

14.    Sergeant McAchran's statements to Defendant were coupled with the important caveat, expressed on several occasions during the interview, that Sergeant McAchran lacked the authority to decide the nature and extent of any criminal prosecution on his own.

15.    Defendant is a former police sergeant and was familiar with the meaning of a criminal suspect's "advice of rights" and "waiver of rights".

16.    During his court testimony, Defendant acknowledged that Sergeant McAchran repeatedly told him that he (McAchran) could make no promises or guarantees regarding the filing or lack of filing of criminal charges.

17.    Taken in context, Sergeant McAchran's statements would not reasonably be understood as a promise that Defendant would not be prosecuted on the federal charges he is currently facing.

18.    Sergeant McAchran never entered into an express *quid pro quo* bargain with Defendant in which Defendant made incriminating statements in exchange for a specific promise not to be indicted or prosecuted on any of the federal charges he is currently facing.

19.    Sergeant McAchran credibly testified that he made no such promises during the portion of the interview that is not recorded on the videotape.

20.    Defendant's testimony to the contrary was not credible.

21.    During the interrogation by Sergeant McAchran, Defendant made incriminating statements which led to the discovery of two more ounces of methamphetamine and $1,240 in "buy money" at his residence.

22.    Under the totality of the circumstances, Defendant knowingly and voluntarily waived his Miranda rights before making these incriminating statements during the interrogation conducted by Sergeant McAchran on October 5, 2003.

23.    Following his arrest on October 5, 2003, Defendant initially was released on bond and charged in state district court with possession with intent to distribute methamphetamine, contrary to NMSA 1978, Section 30-31-22(A)(2)(a), a 3rd degree felony.

24.    Defendant elected not to cooperate further with the authorities after the custodial interrogation by Sergeant McAchran on October 5, 2003.

25.    On October 14, 2003, the charge pending against Defendant in state district court was dismissed without prejudice.

26.    On November 21, 2003, Defendant was charged in an *Indictment* [Doc. No. 8] filed in the United States District Court for the District of New Mexico.

27.    The federal *Indictment* charges Defendant with one count of distributing less than 50 grams of a mixture and substance containing methamphetamine (corresponding to the substance that was sold to the confidential source on October 5, 2003) and one count of possession with intent to distribute less than 50 grams of a mixture and substance containing methamphetamine (corresponding to the substance found in Defendant's residence pursuant to the information he supplied to Sergeant McAchran during the interrogation on October 5, 2003).

28.    Considering the totality of the circumstances, the decision to dismiss the charge filed against Defendant in state district court and instead charge him with a two-count

indictment in federal district court was not retaliatory, vindictive, or based on an impermissible classification.

29.    Under the totality of the circumstances, the prosecutorial decisionmaking at issue in this case does not give rise to a presumption of vindictiveness, and the Government has rebutted any such presumption by presenting evidence of legitimate reasons for bringing a two-count indictment against Defendant in federal district court.

30.    Shortly after commencement of the hearing on February 6, 2003, counsel for the government advised the Court that shortly after the conclusion of the hearing of February 2, 2004, she learned that Sergeant McAchran admitted to having a personal romantic relationship with an individual who was also police confidential informant (referred to herein as "Doe"). "Doe" and Sergeant McAchran first met in the early fall of 2003.

31.    The same confidential informant also had a close personal relationship with Defendant from August 2003 until November 2003.

32.    "Doe" became a confidential informant in approximately late August 2003 or early September 2003 and Agent Currant was "Doe's" main point of contact with the police.

33.    "Doe" and Sergeant McAchran became romantically involved with one another shortly after they met.

34.    "Doe" told Sergeant McAchran that she knew Defendant.

35.    During the time she worked as a confidential informant, "Doe" had a romantic relationship with Defendant.

-6-

36.     At no time did "Doe" disclose to Sergeant McAchran that she had a close personal relationship with Defendant.

37.     "Doe's" work as a confidential informant related to matters which did not involve Defendant.

38.     Sergeant McAchran credibly testified that his treatment of Defendant was unaffected by his relationship with confidential informant "Doe."

39.     The testimony elicited by Defendant does not support a reasonable inference to the contrary.

## II.     LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The governmental misconduct alleged by Defendant as a basis for dismissing the charges and/or suppressing the evidence in this case falls into two categories:  (1) reneging on a promise of leniency in exchange for his cooperation, and (2) retaliating against him by filing more serious charges in federal court after he elected not to cooperate further. Defendant contends that this alleged misconduct renders the waiver of his Miranda rights involuntary.  He further contends that this alleged misconduct amounts to vindictive prosecution in violation of the Due Process Clause of the Fifth Amendment, as well as selective prosecution in violation of the constitutional guarantee of equal protection under the law.  For the reasons set forth below, the Court rejects these contentions and concludes that the Government's conduct did not violate Defendant's constitutional rights in this case.

## A.  Voluntariness of Defendant's Waiver of his *Miranda* Rights

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V. Pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and its progeny, persons subjected to custodial interrogation by the Government must be advised of their Fifth Amendment rights, and incriminating statements obtained during such custodial interrogation are subject to the exclusionary rule if the person making the statements has not knowingly and voluntarily waived those rights.  See generally Dickerson v. United States, 530 U.S. 428 (2000).

In this case, there is no question that Defendant was subjected to custodial interrogation by Sergeant McAchran on the morning of October 5, 2003, and that Sergeant McAchran advised Defendant of his Miranda rights before Defendant made the incriminating statements at issue in this case.  Thus, Defendant's motion to suppress these statements cannot be premised on a failure to provide Miranda warnings.  See United States v. Gell-Iren, 146 F.3d 827, 830-31 (10th Cir. 1998).  On the contrary, the fact that Miranda warnings were given "is an important factor tending in the direction of a voluntariness finding."  2 Wayne R. LaFave *et al*., Criminal Procedure § 6.2(c), at 460 (2d ed. 1999); see, e.g., United States v. Roman-Zarate, 115 F.3d 778, 783 (10th Cir. 1997); United States v. Nguyen, 155 F.3d 1219, 1222 (10th Cir. 1998); cf. Berkemer v. McCarty, 468 U.S. 420, 433  (1984) (noting that "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement

authorities adhered to the dictates of Miranda are rare"), quoted with approval in Dickerson, 530 U.S. at 444.

Defendant contends that his incriminating statements are still subject to the exclusionary rule because they were the product of deceptive inducements by Sergeant McAchran which rendered the waiver of his Miranda rights involuntary.  Under both traditional due-process analysis and more recent authorities following Miranda, incriminating statements may be inadmissible if they were obtained as a direct result of an express *quid pro quo* bargain in which the statements are exchanged for false or illusory promises that particular charges will be dropped or that the punishment will be reduced to a certain degree. See generally 2 Wayne R. LaFave, *et al.*, *supra* §§ 6.2(c), 6.9(c), at 453, 587; see, e.g., Clanton v. Cooper, 129 F.3d 1147, 1158-59 (10th Cir. 1997).  Incriminating statements obtained in this manner must be suppressed because they result from the deceptive inducement rather than from an act of free will by the declarant.  See Griffin v. Strong, 983 F.2d 1540, 1543 (10th Cir. 1993).  Also, a false promise that a person will not be prosecuted or will receive a lesser punishment in exchange for making an incriminating statement tends to contradict or undermine the efficacy of the Miranda warning that such statements may be used against that person.  See Roman-Zarate, 115 F.3d at 781 (citing United States v. Rutledge, 900 F.2d 1127, 1131 (7th Cir. 1990)).

Express *quid pro quo* bargains resulting from such deceptive inducements must be distinguished, however, from situations where a law enforcement officer simply makes a generalized prediction that a suspect's cooperation might be helpful to him and offers to

-9-

make such cooperation known to the attorney(s) responsible for deciding the nature and extent of any criminal prosecution.   Such generalized predictions and offers to convey a person's cooperation in a favorable light to the prosecuting attorney do not necessarily render a confession or a waiver of <u>Miranda</u> rights involuntary.  <u>See</u> <u>Nguyen</u>, 155 F.3d at 1223; <u>Roman-Zarate</u>, 115 F.3d at 781; <u>United States v. Dillon</u>, 150 F.3d 754, 758 (7th Cir. 1998); 2 Wayne R. LaFave, *et al.*, *supra* § 6.2(c), at 453 n.91.  Similarly, efforts to persuade a person to cooperate by befriending him, expressing sympathy with his plight, or encouraging him to tell the truth generally do not render a confession involuntary.  <u>See</u> <u>Amaya-Ruiz v. Stewart</u>, 121 F.3d 486, 494 (9th Cir. 1997);  <u>United States v. Rojas-Martinez</u>, 968 F.2d 415, 418 (5th Cir. 1992); 2 Wayne R. LaFave, *et al*., *supra* § 6.2(c), at 459-60.

To determine whether Defendant's confession and waiver of his <u>Miranda</u> rights was voluntary under these standards, the Court's analysis is not restricted to the language of the statements or promises themselves.  Rather, the Court must evaluate the effect of the statements or promises in light of the totality of the surrounding circumstances.  <u>See</u> <u>United States v. Toles</u>, 297 F.3d 959, 965 (10th Cir. 2002).  These circumstances include:  (1) Defendant's age, intelligence, and education; (2) the length of the detention and interrogation; (3) the length and nature of the questioning; (4) whether Defendant was advised of his <u>Miranda</u> rights; and (5) whether Defendant was subjected to any physical punishment.  <u>See</u> <u>id</u>. at 966.

The Defendant in this case is a former law enforcement officer who has "previous experience with the criminal justice system," and there is no indication that his age,

intelligence, or education make him "'unusually susceptible to coercion.'"  Id. (quoting Nguyen, 155 F.3d at 966).  This factor weighs strongly in favor of a finding of voluntariness, particularly given Defendant's prior experience and training as a police officer.   It is reasonable to infer from this prior experience and training that Defendant was aware of the specifics of police interrogation techniques, Miranda warnings, and the limitations on a police officer's authority to determine the nature and extent of any criminal prosecution arising from a matter he investigates.

There is some evidence to suggest that Defendant may have used methamphetamine within 24 hours of his arrest, and that he may have been awake for a long period before Sergeant McAchran interrogated him on the morning of October 5, 2003.  These facts are relevant to the Court's inquiry but, under the particular circumstances of this case, do not warrant the conclusion that his confession or waiver of Miranda rights was involuntary. See United States v. Morris, 287 F.3d 985, 989 (10th Cir. 2002) (concluding that a defendant's waiver of his rights was voluntary despite his "mental capacity--as affected by pain, the effects of pain medications, and the post-traumatic stress of being shot"); Rojas-Martinez, 968 F.2d at 418 ("When a suspect is apprehended in a criminal act late at night, the government is not required to wait until morning to perform police processing and investigation.").  In this regard, the Court notes that the interrogation did not involve the denial of any obvious medical needs or personal comfort items, and was not prolonged to such an extent as to become physically punitive.  Further, most of the interrogation was videotaped, and Defendant appears alert, responsive, and coherent on the videotape.

-11-

Taken in this context, Sergeant McAchran's statements to the effect that Defendant's cooperation during the interrogation might prove helpful, and could be conveyed to the prosecuting attorney in a favorable light, did not rise to the level of an express *quid pro quo* bargain in which the incriminating statements at issue were exchanged for false or illusory promises that Defendant would not be subjected to the federal charges that are currently pending against him.  The Sergeant credibly testified that he advised Defendant that he did not have the authority to make decisions about how the case would be prosecuted and raised the possibility that the matter might be of interest to federal authorities.  "The confession was not coerced merely because the police did not inform Defendant of all the potential charges that could be brought against him."  Nguyen, 155 F.3d at 1222.  "That a defendant balanced personal considerations with the possible cost of disclosure does not render his subsequent statements involuntary."  Roman-Zarate, 115 F.3d at 783.

Under these circumstances, the Court concludes that the Government has met its burden of showing that Defendant's confession and his waiver of his Miranda rights was voluntary.  Accordingly, Defendant's motion to suppress is denied.

**B.**      **Vindictive or Selective Prosecution**

Claims of selective or vindictive prosecution based on presumptively impermissible factors such as retaliation for the exercise of constitutional rights generally rely on either the Fifth Amendment's Due Process Clause or the Fourteenth Amendment's Equal Protection Clause.  To prove prosecutorial vindictiveness in violation of the Due Process Clause, Defendant must show either (1) "actual vindictiveness, or (2) a realistic likelihood of

vindictiveness which will give rise to a presumption of vindictiveness." <u>United States v.</u> <u>Lampley</u>, 127 F.3d 1231, 1245 (10th Cir.1997). If Defendant proves either element, the burden shifts to the Government to justify its prosecutorial decision based on "legitimate, articulable, objective reasons." <u>United States v. Raymer</u>, 941 F.2d 1031, 1040 (10th Cir.1991). Courts "look at the totality of the objective circumstances to decide whether a realistic possibility of vindictive prosecution exists." <u>Raymer</u>, 941 F.2d at 1040.

The essential elements of a selective prosecution claim under the Equal Protection Clause include both discriminatory effect and discriminatory intent. <u>See</u> <u>United States v.</u> <u>James</u>, 257 F.3d 1173, 1178 (10th Cir. 2001); <u>Poole v. County of Otero</u>, 271 F.3d 955, 958 (10th Cir. 2001). To prove discriminatory effect, Defendant must make a credible showing that a similarly-situated individual "could have been prosecuted for the offense for which the defendant was charged, but was not." <u>James</u>, 257 F.3d at 1179; <u>accord</u> <u>Poole</u>, 271 F.3d at 958. As to discriminatory intent, "'the defendant must prove that the government's selection of him for prosecution was invidious or in bad faith and was based on impermissible considerations such as'" the desire to prevent the exercise constitutional rights. <u>Poole</u>, 271 F.3d at 958-59 (quoting <u>United States v. Furman</u>, 31 F.3d 1034, 1037 (10th Cir. 1994)).

In this case, Defendant contends that the Government's decision to pursue a two-count indictment against him in federal court would not have occurred but for its desire to punish him for exercising a specific legal right. To prove such retaliatory conduct, Defendant contends that the Government reneged on its alleged promise of leniency in exchange for his cooperation during the interrogation by Sergeant McAchran on October 5,

2003, and then brought the current federal charges against him after he refused to cooperate any further.

The Court rejects these contentions.  As noted in the preceding analysis of Defendant's motion to suppress, the Court finds that Sergeant McAchran did not enter into an express *quid pro quo* bargain with Defendant in which Defendant's cooperation was exchanged for promises that he would not be prosecuted on the charges that are currently pending against him in this Court.  Thus, the Government did not renege on an enforceable promise made to Defendant during Sergeant McAchran's interrogation.

Further, both the Supreme Court and the Tenth Circuit have held that "a prosecutor may threaten to charge a greater offense if a defendant will not plead guilty to a lesser one, as long as the prosecutor has probable cause to believe that the defendant committed the greater offense."  United States v. Sarracino, 340 F.3d 1148, 1178 (10th Cir. 2003) (citing Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)).  "Given a variety of fact patterns, federal courts repeatedly have rejected the idea that federal prosecution, after state proceedings, constitutes vindictive prosecution."  Raymer, 941 F.2d at 1041.  "If it is constitutionally permissible to use the threat of more severe punishment to encourage a guilty plea, certainly it is legitimate to use the same tactics to encourage a defendant to cooperate with the authorities in the criminal investigation and prosecution of another."  United States v. Williams, 47 F.3d 658, 662 (4th Cir. 1995); accord United States v. Oliver, 787 F.2d 124, 126 (3rd Cir. 1986).

-14-

A federal prosecution that is "larger in scope" than the original charges filed in state court also may legitimately result from "new investigative leads concerning the defendant's criminal activity." Raymer, 941 F.2d at 1041. "In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he may simply come to realize that information possessed by the State has broader significance." United States v. Goodwin, 457 U.S. 368, 381 (1982). Such charging decisions made early in the pretrial stages of a case generally do not give rise to a finding of vindictiveness. See id.

In this case, the Government's decision to file a two-count indictment in federal court in lieu of the state charges appears to arise from the legitimate prosecutorial motives noted above and not from a constitutionally impermissible hostility or punitive animus. There is no basis for a finding of prosecutorial vindictiveness in this case because Defendant "freely decided not to cooperate to a greater extent with the local authorities and, as a result, was later indicted by federal authorities." Oliver, 787 F.2d at 126.

Federal prosecution was appropriate based on the amount of methamphetamine with which Defendant was involved. See Williams, 47 F.3d at 663. Defendant has not shown that other individuals are not prosecuted in federal court when the Government has probable cause to believe they are similarly involved with the quantities of methamphetamine alleged here. For these reasons, the Court rejects Defendant's claims of selective or vindictive prosecution, and Defendant's motion to dismiss is denied.

## C.      The Transcripts of the Video and Audio-Taped Interview

At the hearing on February 2, 2004, the Government sought admission of certain transcripts which allegedly correspond to the conversation recorded on the videotapes of Sergeant McAchran's custodial interrogation of Defendant on October 5, 2003.  The Court initially agreed to admit the transcripts for purposes of the hearing on Defendant's motions, but subsequently reconsidered this decision and denied admission of the transcripts upon reviewing them in conjunction with the videotapes and determining that they are incomplete and not reliable.

The Government withdrew the transcripts and later determined that the videotapes from which they were produced were not the originals.  The original videotapes were then admitted for purposes of the hearing on Defendant's dispositive motions.  Under these circumstances, the Court denies the Government's motions to admit the transcripts as moot.

## III.    CONCLUSION

Both Sergeant McAchran's custodial interrogation of Defendant on October 5, 2003, and the Government's subsequent decision to prosecute him in federal court on a two-count indictment meet the applicable constitutional requirements.   Therefore, neither the exclusionary rule nor Defendant's claims of selective and vindictive prosecution provide any basis for suppressing the evidence or dismissing the charges in this case.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion to Suppress Statement* [Doc. No. 29] is **DENIED**.

IT IS FURTHER ORDERED that Defendant's *Motion to Dismiss for Selective and Vindictive Prosecution, or in the Alternative, Motion to Remand to State District Court* [Doc. No. 30] is **DENIED**.

IT IS FURTHER ORDERED that the United States' *Motion for Admission of Certain Transcripts of Video and Audio-Taped Interview* [Doc. No. 45] and *Amended Motion for Admission of Certain Transcripts of Video and Audio-Taped Interview* [Doc. No. 43] are **DENIED AS MOOT**.

IT IS FURTHER ORDERED that the United States' *Sealed Request for a Hearing* [Doc. No. 65] is **DENIED AS MOOT**.

SO ORDERED this 7th day of April, 2004, in  Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

-17-